In re James Martin CASEY, Debtor.

**PEERLESS INSURANCE COMPANY, Plaintiff,**

v.

**James Martin CASEY, Defendant.**

Bankruptcy No. 94 B 41762 (JLG).
Adv. No. 94–8638A.

United States Bankruptcy Court,
S.D. New York.

May 18, 1995.

Laurence H. Pearson, New York City, for debtor.

Hart & Hume, New York City, for Peerless Ins. Co.

*MEMORANDUM DECISION ON DEFENDANT'S MOTION PURSUANT TO FED.R.CIV.P. 12(b)(6) TO DISMISS COMPLAINT*

JAMES L. GARRITY, Jr., Bankruptcy Judge.

Peerless Insurance Company ("Peerless" or "plaintiff") is a judgment creditor of James M. Casey ("debtor" or "defendant") in the principal sum of approximately $140,-000.00. Peerless commenced this adversary proceeding to obtain a judgment excepting that indebtedness from discharge pursuant to

§§ 523(a)(4) and/or 523(a)(6) of the Bankruptcy Code ("Code"). Debtor has moved pursuant to Fed.R.Civ.P. 12(b)(6) and Bankruptcy Rule 7012 for an order dismissing the complaint for failing to state a claim upon which relief can be granted. Plaintiff opposes the motion. For the reasons set forth below, debtor's motion is granted, although Peerless is accorded leave to replead.[1]

## Facts

In August 1978, debtor was the president, sole corporate officer and sole shareholder of James M. Casey Associates, Inc. ("Casey Associates"), a New York corporation. Complaint ¶¶ 3, 7. Casey Associates formerly was engaged in lottery distributorship activities. Complaint ¶ 8. On or about August 31, 1978, debtor, individually and as president of Casey Associates, executed a "General Agreement of Indemnity" (the "Indemnity Agreement") in favor of Peerless as an inducement to Peerless to issue an indemnity bond on behalf of Casey Associates in connection with its lottery distributorship activities. Id. In reliance thereon Peerless issued two bonds, effective through October 5 and November 21, 1979, respectively, in the aggregate principal amount of $200,000.00 (the "Bonds"). Complaint ¶ 9. Each bond named Casey Associates as the principal, Peerless as the surety and the State of New York, Division of Lottery ("Lottery Division"), as the obligee. Id. Debtor executed each bond in his capacity as president of Casey Associates. Id. Pursuant to continuation certificates, the Bonds were continued one additional year, although one bond was reduced to $50,000. Complaint ¶ 10.

On May 2, 1979, Casey Associates entered into a distributorship agreement with the Lottery Division. Complaint ¶ 11. On March 11, 1980, Lottery Division employees commenced an audit of Casey Associates and determined that Casey Associates had failed to account for and remit $138,390.00 to the Lottery Division in respect of lottery tickets. Complaint ¶ 12. The Lottery Division asserted a claim against the Bonds to cover the shortfall. Complaint ¶ 13. On July 28, 1980, Peerless paid $137,006.00 to the Lottery Division in satisfaction of that claim. Id.

On February 10, 1991, Peerless commenced an action against debtor in state court under the Indemnity Agreement, seeking reimbursement of its payment to the Lottery Division, plus reimbursement for its other losses, costs and expenses (the "Peerless Action"). Complaint ¶ 15. On June 7, 1991, judgment in that action was rendered in favor of Peerless in the sum of $141,898.27, plus interest and costs for a total of $225,-276.13 ("Peerless Judgment"). Complaint ¶ 16. On June 15, 1993, the Appellate Division, First Department upheld the Peerless Judgment but ruled that interest should accrue on the principal only from June 7, 1991, the date of entry of the order granting judgment. Complaint ¶ 17. On or about April 29, 1994, debtor filed a voluntary petition under chapter 7 of the Code. Complaint ¶¶ 4, 5. Peerless is a scheduled creditor of debtor, with the amount of debt being listed in debtor's chapter 7 petition as $183,762.00. Complaint ¶ 6. Peerless timely commenced this litigation. The underlying complaint alleges three grounds for relief. The first and second causes of action seek judgment excepting debtor's indebtedness to Peerless, as adjudicated in the Peerless Judgment, from discharge pursuant to § 523(a)(4) of the Code. See Complaint ¶¶ 20–23; 24–28. The third cause of action seeks a judgment excepting that indebtedness from discharge pursuant to § 523(a)(6) of the Code. See Complaint ¶¶ 29–32.

## Discussion

■ In considering a motion to dismiss a complaint pursuant to Fed.R.Civ.P. 12(b)(6), we must accept as true all of the well-pleaded facts alleged therein. *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir.1985). The motion must be granted when it appears with certainty that no set of facts could be established at trial which would entitle the plain-

---

1. Our subject matter jurisdiction of this adversary proceeding is predicated on 28 U.S.C. §§ 1334(b) and 157(a), and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the

United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

tiff to any relief. *Conley v. Gibson* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985); *In re Rudaw/Empirical Software Products Ltd.,* 83 B.R. 241, 245–46 (Bankr.S.D.N.Y.1988).

### Section 523(a)(4)

■ Section 523(a)(4) of the Code bars the discharge of an individual debtor from any debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The alleged defalcation underlying the first and second causes of action is Casey Associates' failure to account for and remit lottery ticket proceeds to the Lottery Division. *See* Complaint ¶¶ 21, 27. Debtor argues that because Peerless has failed to allege any wrongdoing on Casey Associates' part, neither cause of action states a claim for relief under § 523(a)(4). However, for these purposes, the term "defalcation" includes any failure, innocent or otherwise, by a fiduciary to account for, or pay over, trust funds. Accordingly, Peerless need not allege that Casey Associates' actions were wrongful to state a claim under § 523(a)(4). The allegations in the first and second causes of action state a defalcation on Casey Associates' part. *See, e.g., Quaif v. Johnson,* 4 F.3d 950, 955 (11th Cir.1993); *Burt Building Material Corp. v. Silba (In re Silba),* 170 B.R. 195, 201–02 (Bankr.E.D.N.Y.1994); *Hodnett v. Loevner (In re Loevner),* 167 B.R. 824, 827 (Bankr. E.D.Va.1994); *Hash v. Reed (In re Reed),* 155 B.R. 169, 172 (Bankr.S.D.Ohio 1993).

■ Alternatively, debtor argues that both causes of action must be dismissed because Peerless has not alleged that Casey Associates owed it a fiduciary duty to account for and turn over the funds to the Lottery Division. Federal law determines the meaning of the term "fiduciary capacity" for purposes of § 523(a)(4). *See Driggs v. Black (In re Black),* 787 F.2d 503, 506 (10th Cir.1986); *Ragsdale v. Haller,* 780 F.2d 794, 796 (9th Cir.1986). The term is narrowly construed to include only relationships arising out of express or technical trusts, or statutorily imposed trusts. It does not extend to constructive, implied or resulting trusts. *Davis v.*

*Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934); *Matter of Marchiando,* 13 F.3d 1111, 1115–16 (7th Cir.), *cert. denied sub nom. Illinois Dept. of the Lottery v. Marchiando,* —— U.S. ——, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994); *LSP Investment Partnership v. Bennett (In re Bennett),* 989 F.2d 779, 784 (5th Cir.) *cert. denied sub nom. Bennett v. LSP Inv. Partnership,* —— U.S. ——, 114 S.Ct. 601, 126 L.Ed.2d 566 (1993); *Ragsdale v. Haller,* 780 F.2d at 796. Moreover, the trust relationship must predate and exist apart from the act from which the underlying indebtedness arose. *Matter of Marchiando,* 13 F.3d at 1115–16; *Allen v. Romero (In re Romero),* 535 F.2d 618, 621 (10th Cir.1976). In its first cause of action, Peerless alleges that by failing to account for and remit the lottery ticket sales proceeds to the Lottery Division, Casey Associates breached its fiduciary duty to the Lottery Division. Complaint ¶ 21. It maintains that debtor, as Casey Associates' president, is personally accountable for the damages suffered by Peerless as a result of that breach either because he caused it, or failed to prevent it. Complaint ¶ 22. In the second cause of action, Peerless alleges that because debtor utilized Casey Associates as his alter ego and failed to maintain Casey Associates' separate corporate existence, we can pierce the corporate veil and hold debtor personally accountable for the damages caused to Peerless by Casey Associates' breach of its fiduciary duty to the Lottery Division. *See* Complaint ¶¶ 25–27.

Peerless relies on *In re Baird,* 114 B.R. 198 (9th Cir. BAP 1990), in arguing that its first cause of action states a claim under § 523(a)(4). In that case, debtor was the president and sole shareholder of a construction company ("Company") and was the sole signatory on the Company's checking account. Company contracted to construct a home for an individual, Garrigan, and subcontracted a portion of that work to Woodworking Enterprises, Inc. ("Woodworking"). Although Woodworking fully performed under the subcontract, Company failed to pay it, notwithstanding that Garrigan fully compensated Company pursuant to the underlying construction contract. Debtor filed a voluntary chapter 11 petition and Woodwork-

ing commenced an adversary proceeding for a judgment declaring that its claim was excepted from discharge pursuant to § 523(a)(4) of the Code. Woodworking alleged that under relevant state law, the funds paid by Garrigan to Company pursuant to the underlying construction contract were trust funds held for the benefit of unpaid subcontractors on the Garrigan house, and that debtor's failure to pay those funds to Woodworking constituted a defalcation by a fiduciary under § 523(a)(4). *Id.* at 201. The court held that the statute created an express or technical trust such that Company was a fiduciary of Woodworking for purposes of § 523(a)(4), *id.* at 202–03, and that Company's failure to pay the trust proceeds to Woodworking constituted a defalcation by Company while acting in a fiduciary capacity under § 523(a)(4). *Id.* at 204. Noting that a corporate officer who engages in tortious conduct is personally liable for the tort, notwithstanding that he may have been acting on behalf of the corporation, the court held that "an officer who causes a corporate trustee to commit a breach of trust causing loss to the trust administered by the corporation is personally liable to the beneficiaries for the loss". *Id.* at 204 (citations omitted). The appellate panel concluded that debtor was liable to Woodworking for Company's defalcation and in so holding, reversed the bankruptcy court's grant of summary judgment dismissing the underlying complaint. *Id.* at 206. The principle enunciated in *Baird* has been followed in this district. *See Morris Okun Inc. v. Harry Zimmerman, Inc.,* 814 F.Supp. 346 (S.D.N.Y.1993) (sole shareholder of corporation purchasing perishable agricultural goods personally liable as corporate fiduciary under Perishable Agricultural Commodities Act to unpaid sellers of those goods). *Baird* is inapplicable here, however, because Peerless has not alleged that it ever had an express, technical or statutory trust relationship with Casey Associates, let alone one predating the actions giving rise to the indebtedness adjudicated in the Peerless Judgment. Accordingly, even assuming *arguendo* the truth of the allegations stated in the first cause of action, it fails to state a claim under § 523(a)(4) upon which relief can be granted.

In New York, courts look beyond the corporate form and "pierce the corporate veil" as necessary "to prevent fraud, or illegality, or to achieve equity." *International Aircraft Trading Co. v. Manufacturers Trust Co.,* 297 N.Y. 285, 292, 79 N.E.2d 249, 252 (1948). Thus "where a shareholder uses the corporation for the transaction of the shareholder's personal business, as distinct from the corporate business, the courts have held the shareholder liable for the acts of the corporation in accordance with the general principles of agency". *Port Chester Electrical Constr. Corp. v. Atlas,* 40 N.Y.2d 652, 656–57, 389 N.Y.S.2d 327, 331, 357 N.E.2d 983, 986 (1976) (citations omitted). The "determinative factor" is whether " 'the corporation is a "dummy" for its individual stockholders who are in reality carrying on the business in their personal capacities for purely personal rather than corporate ends'." *Id.* (quoting *Walkovsky v. Carlton* 18 N.Y.2d 414, 418, 276 N.Y.S.2d 585, 588, 223 N.E.2d 6, 8 (1966)). To allege a right to pierce the corporate veil and hold an officer or shareholder liable for the debts of the corporation, a plaintiff "must allege specific facts showing that the shareholder or officer is doing business in his or her individual capacity without regard to corporate formality." *Strojmaterialintorg v. Russian American Commercial Corp.,* 815 F.Supp. 103, 105 (E.D.N.Y.1993). Conclusory statements that the officer or shareholder exercises dominion and control over the corporation are insufficient. *Id.*

There are alternative grounds under Rule 12(b)(6) for dismissing the second cause of action. As with the first cause of action, Peerless has failed to allege that Casey Associates was acting as its fiduciary when its claim arose. Second, Peerless has failed to allege any facts to support its assertion that we can pierce the corporate veil to hold debtor personally accountable for Casey Associates' actions. Its conclusory assertion that "[u]pon information and belief, [debtor] utilized Casey Associates as his alter ego and failed to properly maintain Casey Associates' separate corporate existence", *see* Complaint ¶ 25, cannot withstand the motion to dismiss.

*Section 523(a)(6)*

Section 523(a)(6) of the Code bars the discharge of the debt of an individual debtor "for willful and malicious injury ... to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). For those purposes, an act is willful if it is committed deliberately and intentionally, *see Roy v. Gravel,* 143 B.R. 825, 829 (W.D.La.1992), *aff'd,* 983 F.2d 1062 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2931, 124 L.Ed.2d 681 (1993); *In re Costarella,* 104 B.R. 465, 467 (Bankr.M.D.Fla.1989), although a specific intent to harm or injure need not be alleged. *See Matter of Thirtyacre,* 36 F.3d 697, 700 (7th Cir.1994); *Community Mut. Sav. Bank v. Landrin (In re Landrin),* 173 B.R. 307, 312 (Bankr.S.D.N.Y.1994); *Metromedia Co. v. Fugazy (In re Fugazy),* 157 B.R. 761, 765 (Bankr.S.D.N.Y.1993). An injury is malicious when it is done consciously and without just cause or excuse. *See In re Ikner,* 883 F.2d 986, 991 (11th Cir.1989). Thus, "courts have held that willful and malicious injury occurs when a wrongful act done intentionally necessarily produces the harm that results." *In re Kaperonis,* 156 B.R. 736, 739 (Bankr.S.D.N.Y.1993) (citations omitted).

Plaintiff alleges that by virtue of the Bonds, debtor knew or should have known that Casey Associates' failure to account to the Lottery Division and to remit funds to the Lottery Division would result in injury to Peerless. Complaint ¶ 30. It contends that by his "conduct" debtor knowingly and/or intentionally injured Peerless because Peerless was compelled to pay the Lottery Division the $137,006 shortfall and suffered other damages in the form of expenses, costs and attorney's fees. Complaint ¶¶ 30, 31.

Debtor is correct that this cause of action must be dismissed because plaintiff has not alleged any willful or malicious act, conduct or behavior on the part of the debtor. Peerless misplaces its reliance on *Ford Motor Credit Co. v. Owens,* 807 F.2d 1556 (11th Cir.1987); *St. Paul Fire & Marine Ins. Co. v. Vaughn (In re Vaughn),* 779 F.2d 1003 (4th Cir.1985); and *Bombardier Corp. v. Penning (In re Penning),* 22 B.R. 616 (Bankr.E.D.Mich.1982). Those cases support the proposition that a corporate officer or director can be held liable for the torts of the corporation when he causes the corporation to act in a tortious or illegal way for his personal benefit. *See Ford Motor Credit Corp.,* 807 F.2d at 1559 (debtor caused corporation to dispose of vehicles subject to "floor plan" agreement and to fail to remit proceeds to secured creditor as per agreement); *In re Vaughn,* 779 F.2d at 1006, 1008 (debtor caused corporation to breach agreement to pay specific funds to creditor and instead used them to purchase personal luxury items); *In re Penning,* 22 B.R. at 619 (debtor actively participated in corporation's conversion by making the decision to dispose of snowmobiles and other inventory and not to remit proceeds to secured creditor). Those cases are inapposite because the complaint is devoid of allegations of wrongdoing and self dealing by debtor.

*Leave To Replead*

Peerless has requested that if we find merit to this motion, we accord it leave to replead. Fed.R.Civ.P. 15(a) provides that after a party may no longer amend a pleading as of right, it still "may amend [its] pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Professors Wright and Miller discuss the application of that rule to a dismissal under Rule 12(b)(6), as follows:

> A dismissal under Rule 12(b)(6) generally is not final or on the merits and the court normally will give plaintiff leave to file an amended complaint. The federal policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that plaintiff be given every opportunity to cure a formal defect in his pleading. This is true even though the court doubts that plaintiff will be able to overcome the defects in his initial pleading. Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim. The better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face

of a defective pleading whether plaintiff can state a claim.

5A Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1357 (2d Ed.1990) (footnotes omitted). *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (leave to replead should be "freely granted"). The general rule in this circuit is that leave to replead is readily granted. *See, e.g., Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991); *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988). We will adhere to that standard in this case.

### Conclusion

Based on the foregoing, debtor's motion to dismiss the complaint is granted. Peerless is accorded leave to replead, provided however, that the amended complaint be served and filed on or before June 21, 1995.

SETTLE ORDER.