**ACCORDIA NORTHEAST, INC. Plaintiff,**

v.

**THESSEUS INTERNATIONAL ASSET FUND, N.V., Incorporated, Adriatic Insurance Group, Ltd., Barry Feiner, and Derek Galanis Defendants.**

No. 01 Civ. 5398(RLC).

United States District Court, S.D. New York.

May 24, 2002.

Berkovich and McMenamin (Alexander Berkovich, of counsel), New York City for Plaintiff.

John J. Phelan, III, P.C., Thesseus and Feiner (John J. Phelan, III, of counsel), New York City, for Defendants.

## OPINION

ROBERT L. CARTER, District Judge.

Defendants Thesseus International Fund, N.V., Inc., and Barry Feiner move to dismiss the amended complaint filed by plaintiff Accordia Northeast, Inc. Specifically, defendants contend that the proper venue for this action is the territory of Kosovo, and that plaintiff's amended complaint fails to state a claim for relief. Plaintiff opposes moving the case overseas, and alleges that its amended pleadings are adequate to survive a motion to dismiss under Rule 12(b)(6), F.R. Civ. P. For the reasons set forth below, defendants' motion is denied with the sole exception that plaintiff's claim for conversion is deemed insufficient as a matter of law and therefore dismissed.

## BACKGROUND

This motion to dismiss arises out of a suit filed by plaintiff Accordia Northeast, Inc. ("Accordia") to recover some $750,000 in insurance premiums allegedly owed to plaintiff under its indemnification contract with defendants Thesseus International Fund N.V., Inc. ("Thesseus"), Adriatic Insurance Group, Ltd. ("Adriatic"), Barry Feiner ("Feiner"), and Derek Galanis ("Galanis"). This indemnification agreement was one of several arrangements in a broader enterprise to offer automobile insurance in the territory of Kosovo. (Am. Compl. ¶¶ 32, 33, 36, 39, 40.) Defendants were charged with the task of administering the insurance program in Kosovo, a responsibility that included accounting for and remitting to plaintiff, among others, any insurance premium moneys collected. (Id. ¶¶ 36–42.)

The indemnification agreement at issue here obligated Thesseus and Adriatic to reimburse plaintiff, on demand, for any premium moneys the latter became liable to pay under its related agreement with AIU North America, Inc. and the Insurance company of Pennsylvania (collectively, "AIU"). (Id. ¶¶ 4, 25, 59, 60.) In or about April 2001, representatives of Accordia allegedly discovered, during a trip to Kosovo, that defendants were not turning over all of the premiums they collected, and were instead commingling some of the money with their operating account, and using it to pay personal and day-to-day business expenses. (Id. ¶ 29.) These actions violated defendants' contractual duties to Accordia and AIU, thereby triggering Accordia's liability to AIU for the premiums withheld. (Id.)

On June 14, 2001, plaintiff filed suit against defendants seeking to recover the amount of these unremitted premium moneys. On September 25, 2001, plaintiff amended its complaint. On October 9, 2001, defendants Thesseus and Feiner moved for dismissal of the amended complaint. Plaintiff opposed, bringing events to where they now stand.

## DISCUSSION

### I.

■ Defendants' first main ground for dismissal is that a more appropriate venue for this action is the territory of Kosovo. At the outset, the court notes that defendants erroneously frame this claim as one for a change of venue, pursuant to 28 U.S.C. § 1404(a), rather than one of forum non conveniens. This error is significant because, as defendants themselves observe, "[t]he burden on the party seeking to change the venue is not as heavy as that imposed under a traditional *forum non conveniens* motion." (Defs.' Mem. in Supp. at 3.) However, 28 U.S.C. § 1404(a) applies only to transfers between courts in the federal system. *E.g., Schertenleib v. Traum*, 589 F.2d 1156, 1161 (2d Cir.1978). That statute "does not apply in cases where the purportedly more convenient forum is not a United States district court. In such cases, almost always involving foreign countries, the common law doctrine of forum non conveniens still governs." *Capital Currency Exch. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 607 (2d Cir.1998) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). Here, since the alternative forum is overseas, the common law doctrine of forum non conveniens, with its stricter standard, governs defendants' motion.

■ Pursuant to the United States Supreme Court's decisions in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) and *Koster v. American Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), a

court confronted with a claim of forum non conveniens applies a two-step inquiry. First, the court determines whether an adequate alternative forum exists. *E.g., Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Gilbert,* 330 U.S. at 506–07, 67 S.Ct. 839. If one does, the court then balances a series of public and private factors to decide which of the competing fora is more appropriate for resolution of the dispute. *E.g., Gilbert,* 330 U.S. at 508–09, 67 S.Ct. 839. The defendant bears the burden of establishing both that an adequate alternative forum exists and that the balance of pertinent factors "tilts strongly in favor of trial in the foreign forum." *R. Maganlal & Co. v. M.G. Chem. Co.,* 942 F.2d 164, 167 (2d Cir.1991).

▪ In this case, defendants' forum non conveniens claim fails for several reasons. First, they fail to make the requisite showing that Kosovo constitutes an adequate forum. Usually, the inquiry into adequacy is confined to the determination that defendant is "amenable to process" in the other jurisdiction. *Gilbert,* 330 U.S. at 506–507, 67 S.Ct. 839. "In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied." *Piper Aircraft Co.,* 454 U.S. at 255, 102 S.Ct. 252. Here, the court is concerned that, given the chaos that has characterized Kosovo until only recently, the territory may be lacking even the rudiments of the rule of law. *E.g.,* David A. Moss & Bruce R. Scott, *An Economy for Kosovo, One Building Block at a Time,* N.Y. Times, July 4, 2001, Editorial, at A15 ("There is no meaningful rule of law [in Kosovo], and there are severe weaknesses in areas like banking and insurance."). In other words,

this could well be the rare case where the alternative forum offers no meaningful remedy for plaintiff's alleged harm.

▪ Additionally, defendants' analysis fails to give proper deference to plaintiff's clear preference for litigating this dispute in New York. It is well settled that the "plaintiff's choice of forum should rarely be disturbed." *Gilbert,* 330 U.S. at 508, 67 S.Ct. 839. This remains true even where, as here, a United States plaintiff sues a foreign defendant in a U.S. court that is outside the plaintiff's home district.[1] *See, e.g., Iragorri v. United Tech. Corp.,* 274 F.3d 65 (2d Cir.2001) ("It is not a correct understanding of the rule to accord deference only when the suit is brought in the plaintiff's home district."); *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 103 (2d Cir.2000) ("The district court weighed against the plaintiffs that none of them were residents of the Southern District of New York but did not count in favor of their choice of a U.S. forum that two of them were residents of the United States. This was error."); *Guidi v. Inter–Continental Hotels Corp.,* 224 F.3d 142, 147 (2d Cir.2000) ("[I]n a forum non conveniens case involving a foreign court, the 'home forum' for the [U.S.] plaintiff is any federal district in the United States, not the particular district where the plaintiff lives.") (quotations omitted).

Finally, if the foregoing were insufficient, the public and private factors do not tilt decisively in favor of trial in Kosovo, as they must for defendants to prevail on their motion. *See R. Maganlal & Co.,* 942 F.2d at 167. First, the private interest factors do not clearly favor defendants' choice of forum. These factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of

---

1. Accordia is a New Jersey corporation. (Am. Compl. ¶ 5.)

obtaining attendance of willing, witnesses . . .; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert*, 330 U.S. at 508, 67 S.Ct. 839. In this case, the court cannot say that there would be any net reduction in hardship if this litigation were pursued in a Kosovar court. Rather, moving the litigation overseas would simply shift to plaintiff the very costs that defendants seek to avoid.

In fact, those costs would, if anything, be raised. As in another case recently decided by this court, *State Street Bank And Trust Company v. Inversiones Errazuriz, Limitada*, No. 01 Civ. 3201(RLC), 2002 WL 181697 (S.D.N.Y.2002) (Carter, J.), this dispute is primarily about defendants' obligation to make payments to a United States corporation, as required by an English language agreement, which was negotiated and executed in New York. (Am.Compl.¶¶ 4, 37–38). Plaintiff and defendant Adriatic are U.S. corporations, and defendant Feiner is a U.S. citizen. (*Id.* at ¶¶ 5–9.) Defendant Thessus is a Netherland Antilles corporation with its principal place of operation in New York at Feiner's New York home. (*Id.* at ¶ 12.) Defendants Feiner and Galanis, who plaintiff portrays as "primary material witnesses," (Pl.'s Mem. in Opp'n at 12), are both New York residents. (Am.Compl.¶¶ 8,9.) Finally, plaintiff purportedly plans to introduce "detailed and voluminous transaction summaries" that it claims are located at its New York offices and those of AIG. (Pl.'s Mem. in Opp'n at 12.) Given that much of the evidence and many of the key witnesses seem to be located in this country, requiring plaintiff to transport its witnesses and documents to Kosovo would almost certainly be more expensive than making defendants do the reverse.

Additionally, defendants have failed to demonstrate that the public interest factors favor litigation in the forum of Kosovo. The public interest most relevant to this dispute is the "appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Gilbert*, 330 U.S. at 509, 67 S.Ct. 839. Defendants assert that "the laws and insurance regulations of Kosovo and of UNMIK will be heavily involved in the determination of this claim." (Def.'s Mem. in Supp. at 4–6.) Yet they offer no choice of law analysis or concrete examples of what precise laws and regulations would be implicated.[2] What is more, the Indemnification Agreement, which is at the core of plaintiff's claims, clearly states it "will be governed by the laws of the State of New York without regard to any conflict of laws principles." [3] (Am.Compl.¶ 3.) The balance of public interest factors would thus seem to favor retention of this suit since a federal court in New York is in a much better position than a Kosovar court or tribunal to construe applicable New York law in resolving plaintiff's claims. The part of defendants' motion that advocates dismissal on grounds of forum non conveniens is therefore denied.

2. Plaintiff does not, for example, argue that defendants breached some contractual obligation to obtain all permits required by local law—a claim that might well require extensive analysis of Kosovar and UNMIK regulations.

3. Defendants' assertion that this clause "is an adhesion contracts [sic]" that was "not freely negotiated and bargained for," (Defs.' Mem in Supp. at 6–7), is not only irrelevant, it makes no sense. The Indemnification Agreement was, after all, negotiated and signed by Feiner, an attorney and sophisticated party by any measure. (Am.Compl.¶ 4.)

## II.

Defendants' other principal argument for dismissal is that plaintiff's amended complaint fails, in at least three ways, to state a claim for relief. In assessing this aspect of defendants' motion to dismiss, the court is obligated, under Rule 12(b)(6), F.R. Civ. P., to "read the complaint generously and draw all inferences in favor of the pleader." *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). A complaint may be dismissed pursuant to Rule 12(b)(6), F.R. Civ. P., "only if is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### A.

The first deficiency that defendants identify is a supposed failure on plaintiff's part "to point to any particular transactions or even to time periods covered by" the amended complaint. (Defs.' Mem. in Supp. at 8). This claim is problematic for several reasons. To begin with, the amended complaint alleges numerous facts associated with defendants' apparent failure to remit the hundreds of thousands of dollars in premium moneys owed under the contract. (Am.Compl.¶¶ 27, 29, 31, 46, 51–51.) Additionally, the amended complaint details not only the demands issued to defendants regarding the premium moneys at involved, but also defendants' written and oral promises to make payment, along with subsequent admissions by defendants that the premium moneys were impermissibly commingled with other funds, and used to operate Adriatic. (Am. Compl.¶¶ 50–57.) The wrongs that plaintiff has outlined, in other words, amount to more than "mere suspicion." (Defs.' Mem.

in Supp. at 8). Defendants suggest that plaintiff should be able to plead its allegations with "mathematical" precision. (*Id.*) However, plaintiff has made no allegation of fraud, and is thus under no obligation to plead with such heightened particularity. *See* Rule 9(b), F.R. Civ. P. Given the comparatively liberal requirements of Rule 12(b)(6), F.R. Civ. P., the court cannot conclude, on this basis, that plaintiff has failed to state a claim for relief.

### B.

■ The next deficiency that defendants point to is plaintiff's supposed failure to plead the elements required to justify piercing the corporate veil and imposing liability on defendant Feiner. Under New York law, a party seeking to pierce the corporate veil must make two showings: "(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *American Fuel Corp. v. Utah Energy Dev. Co.,* 122 F.3d 130, 134 (2d Cir.1997) (citing *Matter of Morris v. New York State Dep't of Taxation and Fin.,* 82 N.Y.2d 135, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (N.Y.1993)).

■ Among the evidence that courts have looked to as indicia of complete domination are inadequate capitalization and a corporation's failure to observe such usual formalities as holding shareholder or director meetings. *Thrift Drug, Inc. v. Universal Prescription Adm'rs,* 131 F.3d 95, 97 (2d Cir.1997). In this case, plaintiff's amended complaint specifically references the foregoing factors. For example, plaintiff alleges that Thesseus, an off-shore company with its principal office at the same address as Feiner's personal residence, is a grossly undercapitalized company with no functioning directors, manage-

ment, or employees other than Feiner. (Am.Compl.¶¶ 12–15.) Similarly, plaintiff claims that Adriatic has no assets and maintains no functioning directors, management, or employees other than Galanis and, to a lesser degree, Feiner. (*Id.* ¶¶ 19–21.) These allegations, if proven, could well justify piercing the veil, making dismissal inappropriate.

Plaintiff also alleges, in sufficient detail, that Feiner specifically exercised complete domination and control over Thesseus and Adriatic with respect to the transactions at issue. (*Id.* ¶¶ 4, 25, 34, 37, 38.) Plaintiff points out that Feiner personally negotiated and executed the agreements involved here, on behalf of Thesseus and Adriatic. Feiner alone, according to plaintiff, prepared, negotiated, and executed various insurance policies put in place on behalf of those same two entities, as part of the larger business enterprise in which the parties to this litigation were engaged. (*Id.* ¶¶ 4, 16, 17, 22, 25, 34, 37, 38.) Perhaps most significantly, plaintiff alleges that, during the period in which plaintiff issued its demands that defendants remit the premium moneys, it was Feiner who served as the sole representative for Thesseus and Adriatic, and that it was he who made repeated oral and written promises on behalf of Thesseus, Adriatic, and their financing arm, Vianden, that the premium moneys would be paid.[4] (*Id.* ¶¶ 51, 52, 55, 56.)

Finally, the court is persuaded that plaintiff has adequately pled a wrong committed by Feiner. As discussed above, in part A of this section, plaintiff's allegations of injury are sufficient to survive a motion to dismiss. And, as demonstrated in part

B, the same is true of plaintiff's claim that Feiner completely dominated defendants Thesseus and Adriatic. In light of the foregoing, it is not difficult for the court to conclude as well that plaintiff has adequately demonstrated, for purposes of Rule 12(b)(6), F.R. Civ. P., that "it was Feiner, *alone,* that controlled the actual outcome as to whether plaintiff would ever receive the premium monies" owed under the contracts at issue. (Pl.'s Mem. in Opp'n at 17.) Just to be clear, of course, the court is not suggesting that plaintiff has proven the these things, conclusively or otherwise. The point here is simply that plaintiff has presented sufficiently well pleaded allegations that defendants' motion to dismiss is unavailing where the preceding issues are concerned.

### C.

■ The final difficulty that defendants identify is the amended complaint's failure to state a New York common claim for conversion. On this issue, unlike the others, defendants have a point. It is well settled that "to sustain a conversion claim, a plaintiff must allege acts that are unlawful or wrongful as distinguished from acts that are a mere violation of contractual rights." *Fraser v. Doubleday & Co.,* 587 F.Supp. 1284, 1288 (S.D.N.Y.1984) (Sand, J.). This case involves a contract claim, pure and simple. Plaintiff's sole interest is in the insurance premiums it claims it was owed pursuant to its contracts with defendants. Merely redescribing defendants' alleged breach as an act of conversion is not sufficient to state a valid, distinct claim for relief. *See, e.g., Elma RT v. Landes-*

---

4. On a related note, defendants also seek to interpose a statute of frauds defense, on behalf of Feiner, against any claim that plaintiff had a contract with him specifically. (Defs.' Mem. in Supp. at 14.) Plaintiff, however, has not brought any direct contract claim against Feiner. Rather, the latter's responsibility for the contractual obligations of his corporate counterparts is premised on a theory of alter-ego liability. This renders defendants' statute of frauds defense irrelevant.

*mann Int'l Mktg. Corp.,* 98 Civ. 3662(LMM), 2000 WL 1182812, at *2 (S.D.N.Y.2000) (McKenna, J.) ("[A] conversion claim cannot be based on a breach of contract...."); *Peters Griffin Woodward, Inc. v. WCSC, Inc.,* 88 A.D.2d 883, 452 N.Y.S.2d 599, 600 (1st Dep't 1982) ("An action for conversion can not be validly maintained where damages are merely being sought for breach of contract."). Since plaintiff's conversion claim appears invalid as a matter of law, dismissal is appropriate.

## CONCLUSION

In the final analysis, defendants fail to demonstrate that plaintiff's action should be dismissed pursuant to either the doctrine of forum non conveniens, or Rule 12(b)(6), F.R. Civ. P. In terms of the former, the court is not convinced that the balance of public and private factors tilts decisively in favor of a trial in Kosovo. As for the latter, the court agrees with plaintiff that the amended complaint pleads the harms alleged, as well as the reasons for piercing the corporate veil, in sufficient detail to make dismissal inappropriate, with one exception. The court finds plaintiff's conversion cause of action, which is little more than its contract claim under a different label, to be invalid as a matter of law. The conversion claim is therefore dismissed.

**IT IS SO ORDERED.**